THIS OPINION
 HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN
 ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Louis A. Brown, Respondent,
 
 
 

v.

 
 
 
 Elsie Francis Brown
 and Sharon A. Smith, Defendants, 
 Of Whom Elsie
 Francis Brown is the Appellant.
 
 
 

Appeal From Anderson County
 Joseph W. McGowan, III, Family Court
Judge

Unpublished Opinion No. 2011-UP-367   
 Heard January 11, 2011  Filed July 12,
2011

AFFIRMED IN PART AND REVERSED IN PART

 
 
 
 William Norman Epps, III, of Anderson, for
 Appellant.
 Druanne Dykes White, T. Harper Collins,
 and Sarah Ganss Drawdy, of Anderson, for
 Respondent.
 
 
 

PER CURIAM: Elsie Francis Brown (Wife) appeals the order of the family
 court holding pasture land (Pasture Property) purchased by Louis A. Brown (Husband)
 prior to the marriage had not been transmuted into marital property and Wife
 did not have a special equity in the Pasture Property.  Wife also argues the
 family court erred in failing to order the return to her of certain items of
 personal property.  We affirm as to the Pasture Property and reverse as to the
 personal property.  
FACTUAL/PROCEDURAL HISTORY
The parties were married on
 November 16, 1982.  They separated on December 28, 2006.  At the time of the
 separation, Wife was 80 years old and Husband was 87.[1] 
 Wife has four living children, including Defendant Sharon Smith, from a
 previous marriage.  Husband also has four children from a previous marriage. 
 They had no children together.  
Husband retired from
 Wellington Mills in 1984.  He had purchased the 122-acre Pasture Property in
 1947 for $3,000.  He kept cattle on the Pasture Property until 1998, when he
 sold the cattle to his son Robert.  Wife worked for Bi-Lo until she had to
 retire due to health reasons in 2007.  During the marriage, the parties maintained
 separate bank accounts.  One of Wife's accounts was a joint account with
 Smith.  Wife paid for her car, insurance, her own medical expenses, and some
 groceries with her account.  Husband paid the taxes and insurance on the house
 and Pasture Property, phone, utilities, his medical expenses, and most of the
 groceries from his account.  While they were married, the parties lived in the
 house Husband inherited in 1978.  Wife contributed to numerous improvements
 made to the house.  
Wife decided in early
 December to separate from Husband after he told her to leave.  In preparation
 for the separation, Wife purchased a mobile home, a freezer, a refrigerator,
 and a stove.  In January, Wife transferred most of the money from the joint
 account with Smith to an account solely in Smith's name and purchased a
 certificate of deposit (cd) in Smith's name with the remaining $10,000.  Wife
 acknowledged Smith had not contributed to the funds in the joint account.  When
 Wife left on December 28, she took a considerable amount of personal property. 
 She returned on a later date to retrieve more items of personal property.  
Husband brought this action
 on January 11, 2007.  After a hearing, the family court held the marital
 residence, which had a value of $45,000, had been transmuted into marital
 property.  However, it held the Pasture Property was non-marital and Wife did
 not have a special equity in the property.  The court found the funds in the
 account in Smith's name, as well as the cd, were marital property and credited
 Wife with these funds.  The court held each party would keep ownership and
 possession of the household goods in his or her possession.  The court awarded
 Wife attorney's fees.  Wife filed a motion to alter or amend, which the family
 court denied.  This appeal followed.  
STANDARD OF REVIEW
On appeal from the family
 court, this court reviews factual and legal issues de novo.  Simmons v.
 Simmons, Op. No. 26970 (S.C. Sup.Ct. filed May 9, 2011) (Shearouse Adv. Sh.
 No. 16 at 27, 29); see Lewis v. Lewis, Op. No. 26973 (S.C. Sup.Ct.
 filed May 9, 2011) (Shearouse Adv. Sh. No. 16 at 41, 44).  Although this court
 reviews the family court's findings de novo, we are not required to ignore the
 fact that the family court, which saw and heard the witnesses, was in a better
 position to evaluate their credibility and assign comparative weight to their
 testimony.  Lewis, at 4648.  The burden is upon the appellant to
 convince this court that the family court erred in its findings.  Id. at
 51.
LAW/ANALYSIS
1.  Pasture Property
Wife argues the family court
 erred in failing to find the Pasture Property had been transmuted into marital
 property or that she had a special equity interest in the property.  We
 disagree.
Property acquired prior to
 the marriage is generally considered nonmarital.  S.C. Code Ann. § 20-3-630(A)(2)
 (Supp. 2010).  In addition, marital property does not include "any
 increase in value in nonmarital property, except to the extent that the
 increase resulted directly or indirectly from efforts of the other spouse
 during marriage."  S.C. Code Ann. § 20-3-630(A)(5) (Supp. 2010).  A
 non-owner spouse has a special equity interest in any increase in value of nonmarital
 property resulting from that spouse's material contribution.  Murray v.
 Murray, 312 S.C. 154, 159, 439 S.E.2d 312, 316 (Ct. App. 1993). 
In addition, even if property
 is nonmarital, it may be transmuted into marital property during the marriage.  Johnson
 v. Johnson, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct. App. 1988).  The
 spouse claiming nonmarital property has been transmuted must produce objective
 evidence showing the parties themselves regarded the property as the common
 property of the marriage during the marriage.  Id. at 295, 372 S.E.2d at
 110-11. Evidence of transmutation includes jointly titling the property, using
 the property exclusively for marital purposes, commingling the property with
 marital property so that it becomes untraceable, or using marital funds to
 build equity in the property.  Id. at 295, 372 S.E.2d at 111.  "The
 mere use of separate property to support the marriage, without some additional
 evidence of intent to treat it as property of the marriage, is not sufficient
 to establish transmutation."  Id. at 295-96, 372 S.E.2d at 111.
 Whether property has been transmuted into marital property is a matter of
 intent to be determined from the facts of each case.  Simpson v. Simpson,
 377 S.C. 527, 538, 660 S.E.2d 278, 284 (Ct. App. 2008).  
Husband purchased the Pasture
 Property in 1947 for $3,000.  An appraiser valued the property at $383,000 at
 the time of the hearing.  The Pasture Property was fenced and Husband kept
 cattle on it.  In 1998, Husband's son purchased the cattle from Husband for
 $10,000 and took over the duties of caring for the cattle and the property.  Husband
 never had any debt on the Pasture Property during the marriage.  In addition,
 he paid all of the taxes and insurance on the Pasture Property from his
 account.  The Pasture Property was titled solely in his name and Husband had
 devised the Pasture Property to his children in his will.  Wife acknowledged
 Husband never indicated he would transfer the Pasture Property into her name. 
 She also acknowledged that for years, his will provided the Pasture Property
 would go to his children.  
Wife claimed she shared in
 the care of the cattle.  She testified she went with Husband at least twice a
 day to check on the cattle.  In addition she stated she accompanied Husband
 when taking the cows to market.  When Husband was in the hospital, Wife and
 Smith cared for the cattle.  Wife's son testified Husband and Wife always
 worked on the Property together.  Reverend Samuel Duncan testified that he
 frequently visited the parties' home during marriage.  He stated that often
 when he arrived at the house, they would not be home.  They would later
 apologize and explain they had been working at the farm.  However, he
 acknowledged he did not know what chores Wife did at the farm.  Dr. Andrew
 Singer, the veterinarian who treated the cattle, stated Wife was always with
 Husband when he brought cattle to the practice.  Wife helped load and unload
 the cattle and went inside to make the payments.  He stated during the later
 years, he dealt exclusively with her while Husband stood by the truck.  
In contrast, Husband
 testified Wife did not work with him on the Pasture Property.  He stated that
 when Wife accompanied him to the property, she simply watched him work. 
 Husband's son Robert testified Husband did all of the work on the Pasture Property
 with Robert's occasional help.  Robert testified Wife often stayed in the truck
 when the parties drove to the Property.  Sheila Loftis, who lived near the
 Pasture Property, testified she only saw Husband and Robert working on the
 property.  She never saw Wife working there.  Similarly, another neighbor who lived
 near the Pasture Property stated in an affidavit that he had never seen Wife on
 the property.  
We find the record supports
 the family court's rulings that the Pasture Property had not been transmuted
 and Wife did not have a special equity in the property.  Husband manifested no
 intent to share the Pasture Property with Wife.  Wife made no financial
 contributions to the Pasture Property and Husband paid for all taxes and
 insurance on the Property from his separate account.  Although the property had
 significantly increased in value, the increase was due mainly to changes in the
 market conditions according to the appraiser.  While the good condition of the
 property also added to the value, the evidence of Wife's non-financial
 contributions to the property is contradictory.  As the family court was in a
 better position to judge the credibility of the witnesses, we find the court
 did not err in ruling Wife had no interest in the Pasture Property.  
2.  Personal Property
Wife argues the family court
 erred in failing to order the return of Wife's nonmarital property that is
 located at the marital residence.  We agree.  
As stated above, property acquired
 prior to the marriage is generally considered nonmarital.  § 20-3-630(A)(2).  In
 addition, property acquired by either party by gift from a party other than the
 spouse is considered to be nonmarital.  S.C. Code Ann. § 20-3-630(A)(1) (Supp.
 2010).  
On a form entitled Marital
 and Non-Marital Property Subject to Equitable Distribution, Wife listed seven
 items as "Personal property not subject to equitable distribution left at
 marital residence":  
Large
 Set of Silverware (Gift from my Daughter)
Projector
 and Slides (Personally mine; taken on mission trips to various countries)
Pressure
 Cooker (Belongs to Grace Metz)
Cuckoo
 Clock (Gift from my son from Germany)
Little
 Lamp (My son made when he was in School)
Drinking
 Glasses (I brought them from Ohio)
Table
 and 2 Chairs (I brought them from Ohio)
The family court ordered each
 party was to maintain ownership and possession of the household goods in his or
 her possession.  Husband does not contend the above listed items were in fact
 marital property.  However, the record is not clear that Husband has possession
 of all of the items on the list.  For example, Husband testified Wife left him
 with no tables.  To the extent the family court allowed Husband to have
 ownership of any items Wife acquired before the marriage or that were gifted
 solely to her, we find error in its ruling.  Husband should return to Wife any
 of these items that he, in fact, does retain in his possession.  
CONCLUSION
We affirm the family court's
 ruling that Wife has no interest in the Pasture Property.  However, we find the
 family court erred in allowing Husband to retain items of personal property
 that Wife acquired before the marriage or that were gifted solely to her. 
 Accordingly, the order of the family court is 
AFFIRMED IN PART AND REVERSED IN PART.
HUFF and
 LOCKEMY, JJ., and CURETON, A.J., concur.  

[1] Wife was born
 June 5, 1926.  Husband was born December 1, 1919.